UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

**JOSEFINA GONZALEZ, EDGAR FERNANDO
VELICELA, EDGAR PATRICIO VELICELA, JOHN
JAIRO VELICELA, MARCO TULIO SALDANHA,
JOSE ARMANDO SAMBULA, JOSE GINO DESOUZA,
EDUARDO FERNANDO MACANCELA CHEDRAUI
and VICTOR MANUEL DISLA,**

                                             **Plaintiffs,**

CLASS ACTION
COMPLAINT

FLSA COLLECTIVE
ACTION

                                  **-against-**

**PENN STATION SHOE REPAIR, INC. d/b/a
DRAGO SHOE REPAIR, 45TH STREET PARK AVENUE
SHOE REPAIR INC. and VADIM KHAIMOV,
individually,**

                                          **Defendants.**

-------------------------------------------------------------------------X

      Plaintiffs Josefina Gonzalez ("Gonzalez"), Edgar Fernando Velicela ("E.F. Velicela"), Edgar Patricio Velicela ("E.P. Velicela"), John Jairo Velicela ("J.J. Velicela"), Marco Tulio Saldanha ("Saldanha"), Jose Armando Sambula ("Sambula"), Jose Gino DeSouza ("DeSouza"), Eduardo Fernando Macancela Chedraui ("Macancela") and Victor Manuel Disla ("Disla") (collectively "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorneys, Bruce E. Menken of Beranbaum Menken LLP and Jacob Aronauer of The Law Offices of Jacob Aronauer, complaining of Penn Station Shoe Repair, Inc. d/b/a Drago Shoe Repair, 45th Street Park Avenue Shoe Repair Inc. and Vadim Khaimov (collectively herein "Defendants"), allege the following:

### NATURE OF THE ACTION

1. This is a class action brought on behalf of Plaintiffs and all similarly situated

      individuals who are or were employed by Defendants as shoe shiners and shoe

repairers to recover unpaid minimum wages, spread of hours and overtime compensation under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") against Defendants.

2. Plaintiffs and the collective and Rule 23 class worked (or currently work) at the shoe repair stores individually owned by Defendants.

3. As discussed in more detail below, Defendants own and operate at least two shoe shine and repair stores located in New York City.

4. Plaintiffs bring this action on behalf of themselves and all similarly situated current and former non-exempt workers (the "FLSA Collective Class") who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. §§ 201 et seq., and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA that occurred at the shoe repair stores owned and controlled by Defendants.

5. Plaintiffs also bring this action on behalf of themselves and other similarly situated employees who worked more than ten hours per day for less than the minimum wage but were not paid spread of hours in pay in compliance with the NYLL by Defendants.

6. Plaintiffs also bring this action under the Wage Theft Prevention Act for Defendants' failure to provide written notice of wage rates in violation of said laws.

7. Plaintiffs also seek to certify a class under Rule 23 on behalf of those similarly situated current and former shoe shiners and shoe repairers who were not paid overtime, minimum wages and spread of hours in violation of the NYLL (the "Rule 23 Class").

8. Plaintiffs and the FLSA collective class and the Rule 23 Class seek injunctive and declaratory relief against Defendants for their unlawful actions, compensation for their failure to pay overtime wages, minimum wages and spread of hours, liquidated damages, compensatory damages, pre-judgment and post-judgment interest, and attorneys' fees and costs, pursuant to the FLSA and the NYLL.

9. Finally, as discussed below, the vast majority of Plaintiffs bring this action under the retaliatory provisions of the FLSA and NYLL, respectively against Defendants.

10. As discussed in more detail below, Charles Drago ("Drago") informed Defendant Khaimov that many of Khaimov's current employees were suing him (Drago) for unpaid wages in *Macancela v. Port Drago Corp.*, 1:19-cv-05856 (LTS) (JLC) (the "*Macancela Matter*").

11. Upon learning that his current employees were suing Drago for unpaid wages, Defendant Khaimov engaged in systematic efforts to terminate their employment.

12. This systematic effort included, but was not limited to, attempting to require his employees to sign unlawful independent contractor agreements, calling the Amtrak police in an attempt to intimidate them because of their immigration status and, finally, terminating their employment.

13. In January 2020 all employees of Defendants who had joined the *Macancela Matter* were terminated from employment with Defendants.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action under 28 U.S.C. § 1331, 29 U.S.C. §§ 216(b)(c) and 217; and 28 U.S.C. § 1337.

15. This Court has supplemental jurisdiction over the New York state law claims under the principles of pendent and ancillary jurisdiction.

16. Venue is proper in this district under 28 U.S.C. § 1391(b)(c), because all or a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

### Plaintiffs and the Putative Class

17. Plaintiffs and the other members of the putative class are former employees of Defendants.

18. These positions include, but are not limited to, shoe shiners and shoe repairers.

19. Plaintiffs worked for Defendants for various time periods at both Penn Station as well as other shoe repair stores owned and operated by Defendants in New York City, where the Defendants follow the same illegal pay and timekeeping practices.

20. Plaintiffs were covered employees within the meaning of the FLSA and the NYLL.

### Defendants Vadim Khaimov, Penn Station Shoe Repair, Inc. and 45th Street Park Avenue Shoe Repair Inc.

21. Defendant Penn Station Shoe Repair, Inc. is a domestic limited liability company engaged and operating in the shoe shining and repair industry.

22. The corporate address listed for Penn Station Shoe Repair, Inc. is 1 Penn Plaza, Amtrak Level Concourse, New York, New York 10119.

23. Penn Station Shoe Repair, Inc. has been incorporated since October 24, 2018 after Defendants bought the Penn Station location business from Charles Drago—who previously owned Penn Station's "Drago Shoe Repair."

24. On information and belief, Vadim Khaimov owns and controls Penn Station Shoe Repair, Inc.

25. On information and belief, Khaimov has complete control of Penn Station Shoe Repair, Inc.

26. On information and belief, Khaimov determines the salaries and work schedules of its employees, including but not limited to, shoe shiners and shoe repairers.

27. At all times relevant to this action, Penn Station Shoe Repair, Inc. was an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

28. Penn Station Shoe Repair, Inc. has (1) employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) an annual gross volume of sales in excess of $500,000.00.

29. Defendant 45th Street Park Avenue Shoe Repair Inc. ("Park Ave. Shoe Repair") is a domestic business corporation in the shoe shining and repair industry.

30. The corporate address listed for Park Avenue Shoe Repair, Inc. is 230 Park Avenue, New York, New York 10169.

31. 45th Street Park Avenue Shoe Repair Inc. has been incorporated since 2010.

32. Vadim Khaimov is listed as the Chief Executive Officer of 45th Street Park Avenue Shoe Repair Inc.

33. On information and belief, Vadim Khaimov owns and maintains complete control over Park Ave. Shoe Repair.

34. On information and belief, Khaimov determines the salaries and work schedule of the employees of Park Ave. Shoe Repair, including but not limited to, shoe shiners and shoe repairers.

35. At all times relevant to this action, Park Ave. Shoe Repair was an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

36. Park Avenue Shoe Repair, Inc. has (1) employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) an annual gross volume of sales in excess of $500,000.00.

## FACTS

### Charles Drago

37. On information and belief, Charles Drago has been in the shoe repair business since at least 1972.

38. On information and belief, Charles Drago inherited the stores from his father and maintains stores throughout New York City.

39. Drago, though, has slowly begun to sell the various stores he owns.

40. This includes the sale of the Penn Station Drago store to Khaimov in October 2018.

### Vadim Khaimov

41. On information and belief, Defendant Khaimov has been in the shoe shining business for at least 10 years.

42. On information and belief, Defendants own and operate at least two stores in New York City.

43. Some of Defendants' stores include, but are not limited to, a shoe shine stand at 230 Park Avenue outside Grand Central Station.

44. In October 2018, Khaimov purchased the Penn Station Drago Shoe Repair from Drago.

45. Depending on the location, Defendants' respective stores are open at least six days a week.

46. Plaintiffs and the class work on behalf of Defendants at least five days a week and all work more than 40 hours a week.

47. In addition, Plaintiffs and the class frequently work 10 or more hours a day.

48. Shoe shiners and shoe repairers are paid a flat weekly rate that is not in compliance with the FLSA and NYLL minimum wage and overtime laws.

**Plaintiffs' Employment at Defendants**

**Josefina Gonzalez**

49. Since 2006, Gonzalez has worked for Defendants.

50. Initially, Gonzalez worked on behalf of Defendants at 230 Park Avenue.

51. From 2013 until May 2019, Gonzalez worked Monday through Friday.

52. Each day, Gonzalez worked from 6am to 6pm except on Fridays when she worked until 5pm.

53. In 2013, Gonzalez was paid $60 a week.

54. In 2014 and 2015, Gonzalez was paid $70 a week.

55. From 2016 through 2019, Gonzalez was paid $80 a week.

56. In May 2019, Defendants transferred Gonzalez from Park Ave. Shoe Repair to Drago Shoe Repair located in Penn Station.

57. From May 2019 through August 2019, Gonzalez worked Monday through Thursday from 6am to 6pm and on Saturdays from 9 am to 5 pm.

58. Gonzalez was paid $80 a week for working from Monday through Thursday and $30 per for working on Saturdays.

59. From September 2019 until the end of her employment in January 2020, Gonzalez worked Monday through Friday. Each day Gonzalez worked from 6 am to 6pm and was paid $120 a week.

60. From September 2019 until the end of her employment in January 2020, Gonzalez worked on Saturdays and was paid $30 for working that day.

61. Gonzalez's salary was never inclusive of overtime. Rather, Gonzalez was only paid for the first 40 hours she worked.

62. Defendants always paid Gonzalez in cash.

63. Defendants never withheld money for taxes from Gonzalez's salary.

64. Throughout Gonzalez's employment with Defendants she was not required to clock in or clock out.

65. In January 2020, Defendants became aware that Gonzalez was considering filing a lawsuit against Defendants, and demanded that she sign a contact falsely stating she was an independent contractor on behalf of Defendants.

66. Plaintiff's conscience did not allow her to sign something that was so blatantly false, so Plaintiff refused to go to work and considered herself fired.

**Edgar Fernando Velicela**

67. E.F. Velicela worked for Drago from 2003 until October 2018.

68. E.F. Velicela filed a FLSA consent form in the *Macancela Matter* on January 14, 2020.

69. E.F. Velicela worked for Defendants from November 2018 until his unlawful, retaliatory termination on or about January 23, 2020.

70. On behalf of Defendants, E.F. Velicela worked Monday through Friday, from 6am to 6pm.

71. In 2018, E.F. Velicela was paid $150 a week by Defendants. This salary was only for the first 40 hours he worked and was not inclusive of overtime.

72. Defendants always paid E.F. Velicela in cash throughout his employment.

73. In addition, Defendants did not withhold money for taxes from E.F. Velicela when they paid him.

74. E.F. Velicela was never required to "clock in" or "clock out" by Defendants.

75. On information and belief, Drago informed Defendants that E.F. Velicela had joined the *Macancela Matter*.

76. Shortly thereafter, Defendants fired E.F. Velicela.

**Edgar Patricio Velicela**

77. E.P. Velicela worked for Drago at Drago's Penn Station location from April 1994 until October 2018.

78. E.P. Velicela joined the *Macancela Matter* on January 14, 2020.

79. E.P. Velicela worked for Defendants from November 2018 until his unlawful termination on or about January 23, 2020.

80. From November 2018 through the end of his employment, E.P. Velicela worked six days per week: Monday-Friday 6am to 6pm, and Saturday 8am-5pm.

81. Throughout his employment with Defendants, E.P. Velicela was paid $150 per week for his work Monday-Friday, and $40 for his work each Saturday.

82. E.P. Velicela had received an extra $200 per week during his employment with Drago to perform extra tasks, including opening the store and working the cashier.

83. Defendants also paid E.P. Velicela an extra $200 per week in November 2018, but stopped this practice in December 2018.

84. E.P. Velicela's weekly pay was not inclusive of overtime.

85. In addition, Defendants did not withhold money for taxes from E.P. Velicela when they paid him.

86. Defendants always paid E.P. Velicela in cash throughout his employment.

87. E.P. Velicela was never required to "clock in" or "clock out" by Defendants.

88. On information and belief, Drago informed Defendants that E.P. Velicela had joined the *Macancela Matter.*

**John Jairo Velicela**

89. J.J. Velicela worked for Drago at Drago's Penn Station location from 2007 until October 2018.

90. J.J. Velicela joined the *Macancela Matter* on January 14, 2020.

91. J.J. Velicela worked for Defendants from November 2018 until his unlawful termination on or about January 23, 2020.

92. J.J. Velicela was paid $150 a week by Defendants. This salary was only for the first 40 hours he worked and was not inclusive of overtime.

93. In addition, Defendants did not take money for taxes from J.J. Velicela when they paid him.

94. Defendants always paid J.J. Velicela in cash throughout his employment.

95. J.J. Velicela worked on behalf of Defendants Monday through Friday, from 6am to 6pm.

96. J.J. Velicela was paid a flat weekly salary that was not inclusive of overtime.

97. J.J. Velicela was never required to "clock in" or "clock out" by Defendants.

98. On information and belief, Drago informed Defendants that J.J. Velicela had joined the *Macancela Matter* and Defendants terminated his employment soon after.

**Jose Gino DeSouza**

99. DeSouza worked for Drago from 2009 through October 2018.

100. DeSouza worked for Defendants from November 2018 until his unlawful termination on or about January 23, 2020.

101. DeSouza's work schedule on behalf of Defendants was Monday through Friday from 6am to 7pm.

102. DeSouza was paid $150 a week. This was a flat weekly salary that was not inclusive of overtime. Rather, DeSouza was only paid for the first 40 hours he worked.

103. Throughout DeSouza's employment with Defendants, he was not required to clock in or clock out.

104. DeSouza joined the *Macancela Matter* on January 10, 2020.

105. On information and belief, Drago informed Defendants that DeSouza had joined the *Macancela Matter*.

106. Shortly thereafter, Defendants terminated DeSouza's employment.

**Victor Manuel Disla**

107. Disla worked for Defendant Drago from 2010 until October 2018.

108. Disla worked for Defendants from November 2018 until his unlawful termination on or about January 23, 2020.

109. Disla's work schedule was Monday through Friday from 8am to 6pm.

110. Disla was paid $150 a week by Defendants. This was a flat weekly salary that was not inclusive of overtime. Rather, Disla was only paid for the first 40 hours he worked.

111. Disla was always paid in cash by Defendants without the withholding of any money for taxes.

112. Defendants paid Disla a weekly salary that was not inclusive of overtime.

113. Disla joined the *Macancela Matter* on January 10, 2020.

114. On information and belief, Defendant Drago told Defendants that Disla had joined the *Macancela Matter*.

115. Shortly thereafter, on or about January 23, 2020, Defendants unlawfully terminated Disla's employment.

**Marco Tulio Saldanha**

116. Marco Tulio Saldanha worked for Charles Drago from March 8, 2016 until October 2018.

117. From November 2018 to March 2019, Saldanha worked for Defendants.

118. Saldanha was paid $150 a week by Defendants. This was a flat weekly salary that was not inclusive of overtime. Rather, Saldanha was only paid for the first 40 hours he worked.

119. Saldanha was always paid in cash by Defendants without the withholding of money for taxes.

120. Saldanha worked Monday through Friday from approximately 7am to approximately 6pm.

121. Saldanha joined the *Macancela Matter* on January 6, 2020.

**Jose Armando Sambula**

122. Sambula worked for Charles Drago from 2006 until October 2018.

123. In November 2018, Sambula began working for Defendants.

124. Sambula worked for Defendants from November 2018 until his unlawful termination on or about January 23, 2020.

125. Sambula was paid $150 a week. This was a flat weekly salary that was not inclusive of overtime. Rather, Sambula was only paid for the first 40 hours he worked.

126. Sambula was always paid in cash by Defendants without the withholding of money for taxes.

127. Sambula worked Monday through Thursday from approximately 8:15am to approximately 6:45pm.

128. On Fridays, Sambula worked only until 4pm.

129. Sambula joined the *Macancela Matter* on January 10, 2020.

130. On information and belief, Drago told Defendants that Sambula had joined the *Macancela Matter.*

131. Shortly thereafter, on January 23, 2020, Defendants unlawfully terminated Sambula's employment.

**Eduardo Fernando Macancela Chedraui**

132. Like the other Plaintiffs, Macancela previously worked for Drago.

133. Macancela is the named Plaintiff in the *Macancela Matter*.

134. Macancela worked for Defendants from November 2018 until June 2019.

135. Macancela instructed his counsel not to file the lawsuit in the *Macancela Matter* because he feared retaliation by Defendants.

136. Macancela was scheduled to work for Defendants from Monday through Friday.

137. Each day, Macancela worked on behalf of Defendants from 7am to 8pm, except on Fridays when he worked until 4pm.

138. Macancela was paid $150 a week by Defendants.

139. Plaintiff's salary was not inclusive of overtime. Rather, Macancela was only paid for the first 40 hours that he worked.

140. Macancela was always paid in cash by Defendants without the withholding of money for taxes.

**Defendants Did Not Correctly**
**Apply the NYLL Tip Credit to Plaintiffs**

141. For the reasons set forth herein, Defendants incorrectly applied the tip credit to Plaintiffs.

142. First, Defendants failed to provide notice to Plaintiffs, upon hire, that they were being paid less than the regular minimum wage.

143. Second, Defendants never told Plaintiffs which portion of their minimum wage was being compensated by tips.

144. Third, Defendants failed to correctly apply the tip credit because they did not provide paystubs to their employees, let alone paystubs listing the tip credit.

145. Fourth, Defendants failed to comply with the tip credit provisions because they did not notify Plaintiffs of their rate of compensation.

146. Fifth, when Plaintiffs received a change in salary, Defendants were required to provide Plaintiffs with a 195(1) notice form under NYLL, but failed to do so.

**Defendants Failed to Provide Plaintiffs with Spread of Hours Pay**

147. Throughout their employment with Defendants, Plaintiffs frequently worked 10 or more hours a day.

148. During this time period, Plaintiffs were paid less than the applicable New York minimum wage.

149. Throughout this time period, Defendants failed to pay Plaintiffs an extra hour's pay at the applicable minimum wage when they worked 10 hours or more as required under New York's Spread of Hours law.

**Defendants' Practices Regarding the
Wages and Hours of Other Employees**

150. Defendants paid and continue to pay other shoe shiners and shoe repairers in a manner similar to Plaintiffs.

151. Specifically, Defendants failed to pay all shoe shiners and shoe repairers the required minimum wage and overtime wages because they paid them a minimal flat weekly rate instead.

152. Defendants also did not pay the required spread of hours pay to other shoe shiners and shoe repairers when they worked 10 hours or more in a workday.

153. Defendants also did not provide all shoe shiners and shoe repairers wage notices upon hire and wage statements when they paid shoe shiners and shoe repairers as required under NYLL 195.

**Defendants' Violations of the Wage Theft Prevention Act**

154. The NYLL and Wage Theft Prevention Act require employers to provide all employees with a written notice of wage rates upon hire and when they receive wage increases.

155. Throughout Plaintiffs' employment with Defendants, Defendants paid Plaintiffs' wages without the proper accompanying statement listing the overtime rate or rates of pay, the number of regular hours worked, and the number of overtime hours worked, gross wages, deductions, allowances, if any, claimed as part of the minimum wage, and net wages.

156. Plaintiffs were never given a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and anything otherwise required by law.

157. Upon information and belief, wage notices and statutory notices were never given to or signed by any employee at Defendants.

158. In addition, Defendants failed to provide proper wage statements as required under 195(3).

### *Macancela v. Port Drago Corp. et al.* **and Its Ensuing Aftermath**

159. On June 21, 2019, *Macancela v. Port Drago Corp. et al.*, 19-cv-05956 was filed in the Southern District of New York.

160. As previously discussed, in late October 2018, Charles Drago sold Drago Penn Station location to Vadim Khaimov.

161. The sale included, but was not limited to, the Penn Station location and the use of the name "Drago Shoe Repair."   In addition, Khaimov continued to employ many former employees of Charles Drago.

162. After the *Macancela Matter* was filed, a number of Drago's former employees submitted FLSA Opt-in forms to join the *Macancela Matter*.

163. Specifically, the following current employees of Khaimov joined the Macancela Lawsuit:  Edgar Fernando Velicela, Edgar Velicela, John Velicela, Jose DeSousa, Victor Disla and Jose Sambula (the "Fired FLSA Opt-ins").

164. On information and belief, Charles Drago informed Vadim Khaimov of the *Macancela Matter* and that, in addition, Khaimov was employing the Fired FLSA Opt-ins.

165. Upon learning that he was employing the Fired FLSA Opt-ins who were suing their former owner for unpaid wages, Khaimov took various steps to terminate their employment.

166. These steps included, but were not limited to, attempting to force the Fired FLSA Opt-ins to sign an inaccurate and baseless independent contractor agreement.  A copy of the independent contractor agreement is annexed as Exhibit A.

167. Upon information and belief, Khaimov told all his employees that they had to sign this independent contractor agreement if they wanted to continue working for him.

168. In addition, Khaimov contacted the Amtrak police in an attempt to intimidate the FLSA Opt-ins.

169. After unsuccessfully attempting to intimidate the Fired FLSA Opt-ins to resign and their refusal to sign the independent contractor agreement, Defendants terminated their employment.

## FLSA COLLECTIVE ACTION ALLEGATIONS

170. The claims in this Complaint arising out of the FLSA are brought by Plaintiffs on behalf of themselves and other similarly situated shoe shiners and shoe repairers who are current and former employees of Defendants since the date three years prior to the filing of this Complaint who elect to opt-in to this action (the "FLSA Collective").

171. The FLSA Collective Plaintiffs consist of more than 50 similarly situated current and former employees of Defendants, who have been victims of Defendants' policies and practices that have violated their rights under the FLSA, by inter alia, willfully denying them minimum wages and overtime wages.

172. Defendants are liable under the FLSA for, inter alia, failing to properly compensate Plaintiffs and the FLSA Collective Plaintiffs.

173. As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective Plaintiffs. This policy, pattern or practice includes, but is not limited to:

(a)    not providing shoe shiners and shoe repairers accurate paystubs setting forth their hourly rate and the hours worked;

(b)    paying shoe shiners and shoe repairers a flat weekly rate in cash that was less than the applicable minimum wage under the FLSA;

(c)    requiring all shoe shiners and shoe repairers to work more than 40 hours a week but not paying them time and one half for all work performed after 40 hours, but instead just paying shoe shiners and shoe repairers a minimal flat weekly rate.

174. Defendants' unlawful conduct, as described in this Complaint, is pursuant to a company policy or practice of minimizing labor costs by failing to adequately compensate Plaintiffs and the FLSA Collective Plaintiffs for the hours and overtime hours worked.

175. Defendants are aware or should have been aware that federal law required them to pay Plaintiffs and the FLSA Collective Plaintiffs minimum wage and overtime premiums for hours worked in excess of 40 per workweek.

176. Plaintiffs and the FLSA Collective Plaintiffs perform or performed the same primary duties and were subject to the same policies and practices by Defendants.

177. Defendants' unlawful conduct is widespread, repeated and consistent.

178. There are many similarly situated current and former non-exempt shoe shiners and shoe repairers who have been denied overtime wages and minimum wages in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. This notice should be sent to the FLSA Collective Plaintiffs pursuant to 29 U.S.C. § 216(b).

179. Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## CLASS ACTION ALLEGATIONS AGAINST DEFENDANTS

180. <u>Proposed Class.</u>   The proposed class comprises all individuals who worked for Defendants as shoe shiners and/or shoe repairers during the applicable period commencing six years before this Complaint was filed.

181. All class members were not paid correctly in accordance with the NYLL.

182. All class members were not provided with wage notices and wage statements as required by the NYLL.

183. These class members worked more than 40 hours per week for Defendants.   The class members, though, were not paid overtime in compliance with the NYLL in that they were not paid time and one half for all work performed after 40 hours.

184. Class members were also not paid spread of hours pay in accordance with the NYLL.

185. Class members were further not paid the proper minimum wage in compliance with the NYLL for all work performed up to 40 hours per week.

186. <u>Ascertainability.</u>   The identity of all class members is readily ascertainable from Defendants' records, and class notice can be provided to all class members by means permitted by Rule 23 of the Federal Rules of Civil Procedure.   To be effective, class notice should be provided not only through written communication to each class member's last known address as reflected in Defendants' records, but also through Spanish and Portuguese language newspaper and radio announcements, workplace postings, and other alternative means of notice designed to reach this class of transient, non-English speaking employees.

187. <u>Numerosity.</u>  The size of the class makes a class action both necessary and efficient. The size of the class consists of more than 50 employees.  The class is so numerous that joinder is impracticable.

188. <u>Common Questions Of Law and Fact.</u> This case poses common questions of law and fact affecting the rights of all class members, including:

   a) Whether it was Defendants' policy and practice to pay the proper minimum wage;

   b) Whether it was Defendants' policy and practice to pay overtime to those putative class members who worked in excess of 40 hours in a workweek;

   c) Whether it was Defendants' policy and practice to pay spread of hours compensation to those putative class members who were not paid minimum wages and worked 10 or more hours in a day;

   d) Whether Defendants provided accurate and lawful wage notices to Plaintiffs and the putative class at the time of hiring; and,

   e) Whether Defendants provided accurate and lawful wage statements to Plaintiffs and the putative class when they paid them.

189. <u>Typicality.</u>  The claims of the individual Plaintiffs are typical of the claims of the class as a whole.  Defendants' unlawful wage policies and practices, which have operated to deny Plaintiffs and the class the overtime, minimum wage and spread of hours compensation required by law, are typical of the unlawful wage policies and practices that have and will continue to operate to deny other class members lawful compensation.

190. <u>Adequacy of Class Representation.</u>  The named Plaintiff Josefina Gonzalez can adequately and fairly represent the interests of the class as defined above, because her individual interests are consistent with, and not antagonistic to, the interests of the class, to wit: she was not paid the proper minimum wages, spread of hours pay

and overtime pay and was fired in retaliation for asserting her rights under the FLSA and NYLL.

191. <u>Propriety of Class Action Mechanism.</u>  Defendants have implemented a series of unlawful schemes that are generally applicable to the class, making it appropriate to issue final injunctive relief and corresponding declaratory relief with respect to the class as a whole.  Class certification is also appropriate because the common questions of law and fact predominate over any questions affecting only individual members of the class.  The prosecution of separate actions against Defendants by individual class members would create a risk of inconsistent or varying adjudication, which would establish incompatible standards of conduct for Defendants.  For all these and other reasons, a class action is superior to other available methods for the fair and efficient adjudication of the controversy set forth in this Complaint.

192. This action is properly maintainable as a class action under Federal Rules of Civil Procedure ("FRCP") 23(b)(2) and 23(b)(3).

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act-Minimum Wages and Overtime Wages
### <u>(Brought on Behalf of Plaintiffs and the FLSA Collective Plaintiffs)</u>

193. Plaintiffs on behalf of themselves and the FLSA Collective Plaintiffs, re-allege and incorporate by reference all allegations in all preceding paragraphs.

194. Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Complaint.

195. At all times relevant, Plaintiffs and the FLSA Collective Plaintiffs were employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 et seq., and/or they were engaged

in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. § 203.  At all relevant times, each Defendant has employed "employee[s]," including Plaintiffs and the FLSA Collective Plaintiffs.

196. Defendants were required to pay directly to Plaintiffs and the FLSA Collective Plaintiffs the applicable federal minimum wage rate for all hours worked.

197. Defendants failed to pay Plaintiffs and the FLSA Collective Plaintiffs the minimum wages to which they are entitled under the FLSA.

198. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 et seq., and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the FLSA Collective Plaintiffs.

199. Plaintiff and the FLSA Collective Plaintiffs worked in excess of 40 hours throughout the relevant period.

200. Defendants willfully failed to pay Plaintiffs and the FLSA Collective Plaintiffs the appropriate overtime premiums for all hours worked in excess of 40 hours per workweek, as required by the FLSA, 29 U.S.C. §§ 201 et seq., and the supporting federal regulations.

201. Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.  Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective Plaintiffs.

202. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 28 U.S.C. §§ 201 et seq.

203. As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective Plaintiffs have suffered damages by being denied minimum wages and overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorney fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 et seq.

**SECOND CAUSE OF ACTION**
**New York Labor Law Failure to Pay Minimum Wages, Overtime Wages and**
**Spread of Hours Wages**
**<u>(Brought on Behalf of Plaintiff and the Rule 23 Class)</u>**

204. Plaintiffs, on behalf of themselves and the Rule 23 Class, re-allege and incorporate by reference all allegations in all preceding paragraphs.

205. Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

206. At all times relevant, Plaintiffs and the Rule 23 Class were employees of Defendants within the meaning of the NYLL §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

207. At all times relevant, Plaintiffs and the Rule 23 Class were covered by the NYLL.

208. The wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor Regulations apply to Defendants and protect Plaintiffs and the Rule 23 Class.

209. Defendants failed to pay Plaintiffs and the Rule 23 Class the minimum hourly wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.

210. Through their knowing or intentional failure to pay minimum hourly wages to Plaintiffs and the Rule 23 Class, Defendants have willfully violated the NYLL, Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

211. Defendants failed to pay Plaintiffs and the Rule 23 Class the overtime premium of one and a half times the regular hourly rate of pay, in violation of the NYLL.

212. Defendants' failure to pay required overtime to Plaintiffs and the Rule 23 Class was willful.

213. Throughout their employment, Plaintiffs and the Rule 23 Class frequently worked ten hours or more in a workday.

214. Defendants willfully failed to compensate Plaintiffs and the Rule 23 Class with an extra hour's pay at the relevant New York minimum hourly wage rate on days in which the length of their workday was more than ten hours, as required by New York law.

215. Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover from Defendants their unpaid minimum wages, overtime wages, spread of hours, liquidated damages as provided by the NYLL, reasonable attorneys' fees, costs and pre-judgment and post-judgment interest.

**THIRD CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Annual Wage Notices**
**<u>(Brought on Behalf of Plaintiff and the Rule 23 Class)</u>**

216. Plaintiffs on behalf of themselves and the Rule 23 Class, re-allege and incorporate by reference all allegations in all preceding paragraphs.

217. Defendants willfully failed to supply Plaintiffs and the Rule 23 Class with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified by Plaintiffs as their primary language, containing Plaintiffs' rate, including but not limited to overtime rates of pay and basis thereof; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191.

218. Through their knowing or intentional failure to provide Plaintiffs and the Rule 23 Class notices required by the NYLL, Defendants willfully violated NYLL, Article 6, §§ 190 et seq.

219. Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiffs and the Rule 23 Class are entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiff and the Rule 23 Class with wage notices, or a total of five thousand dollars, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

**FOURTH CAUSE OF ACTION**
**New York Labor Law- Failure to Provide Wage Statements**
**(Brought on Behalf of Plaintiffs and the Rule 23 Class)**

220. Plaintiffs, on the behalf of themselves and the Rule 23 Class, re-allege and incorporate by reference all allegations in all preceding paragraphs.

221. Defendants willfully failed to supply Plaintiffs and the Rule 23 Class with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the

number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

222. Through their knowing or intentional failure to provide Plaintiffs and the Rule 23 Class with the wage statements required by the NYLL, Defendants willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Relations regulations.

223. Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiff sand the Rule 23 Class are entitled to statutory penalties of two hundred and fifty dollars for each work day that Defendants failed to provide Plaintiff and the Rule 23 Class with accurate wage statements, or a total of five thousand dollars, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

**FIFTH CAUSE OF ACTION**
**Unlawful Retaliation in Violation of the FLSA § 215(a)(3))**
**(Brought on behalf of Josefina Gonzalez, Edgar Fernando Velicela,**
**Edgar Patricio Velicela, John Jairo Velicela, Jose Armando Sambula,**
**<u>Jose Gino DeSouza and Victor Manuel Disla)</u>**

224. Plaintiffs Josefina Gonzalez, Edgar Fernando Velicela, Edgar Patricio Velicela, John Jairo Velicela, Jose Armando Sambula, Jose Gino DeSouza, and Victor Manuel Disla re-allege and incorporate by reference all allegations in all preceding paragraphs.

225. 29 U.S.C. § 215(a)(3) makes it unlawful for an employer "to discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceedings under or related to this chapter [of the FLSA]."

226. On information and belief, Drago informed Khaimov that many of his current employees had filed a lawsuit under the FLSA and NYLL against Drago.

227. Upon being told this information, Defendants retaliated against Plaintiffs by engaging in various unlawful retaliatory actions against Plaintiffs including terminating many of the Plaintiffs' employment.

228. As a direct and proximate consequence of Defendants' intentional, unlawful, and discriminatory employment policies and practices, Plaintiffs have suffered and continue to suffer, monetary damages, including, but not limited to, a loss of income, including past salary and future salary.

229. As a direct and proximate consequence of the Defendants' intentional, unlawful, and discriminatory employment policies and practices, Plaintiffs Josefina Gonzalez, Edgar Fernando Velicela, Edgar Patricio Velicela, John Jairo Velicela, Jose Armando Sambula, Jose Gino DeSouza, and Victor Manuel Disla have suffered, and continue to suffer, non-monetary damages including, but not limited to, humiliation and mental and physical pain and suffering.

230. For the foregoing reasons, Plaintiffs seek equitable relief as may be appropriate to serve the purposes of the anti-retaliation provision, including but not limited to an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**Unlawful Retaliation in Violation of NYLL § 215(1)(A)**
**(Brought on behalf of Josefina Gonzalez, Edgar Fernando Velicela,**
**Edgar Patricio Velicela, John Jairo Velicela, Jose Armando Sambula,**
**Jose Gino DeSouza and Victor Manuel Disla)**

231. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

232. Pursuant to NYLL § 215(1)(a), "[n]o employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company shall discharge, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer…that the employer has violated any provision of this chapter…"

233. Drago informed Khaimov that many of his current employees had filed a lawsuit under the FLSA and NYLL against Drago.

234.  Upon being told this information, Defendants retaliated against by terminating Plaintiffs' employment.

235. As a direct and proximate consequence of Defendants' intentional, unlawful, and discriminatory employment policies and practices, Josefina Gonzalez, Edgar Fernando Velicela, Edgar Patricio Velicela, John Jairo Velicela, Jose Armando Sambula, Jose Gino DeSouza, and Victor Manuel Disla have suffered and continue to suffer, monetary damages, including, but not limited to, a loss of income, including past salary and future salary.

236. As a direct and proximate consequence of the Defendants' intentional, unlawful, and discriminatory employment policies and practices, the Plaintiffs have suffered,

and continue to suffer, non-monetary damages including, but not limited to, humiliation and mental and physical pain and suffering.

237. For the foregoing reasons, Plaintiffs seek equitable relief as may be appropriate to serve the purposes of the anti-retaliation provision, including but not limited to an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs pray for the entry of an order and judgment against Defendants Penn Station Shoe Repair, Inc., 45th Street Park Avenue Shoe Repair Inc. and Vadim Khaimov, individually as follows:

(a) Designation of this action as a collective action on behalf of the FLSA Collective Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b) against Penn Station Shoe Repair, Inc., 45th Street Park Avenue Shoe Repair Inc. and Vadim Khaimov;

(b) Certification of this case as a class action pursuant to Rule 23 of the FRCP against Penn Station Shoe Repair, Inc., 45th Street Park Avenue Shoe Repair Inc. and Vadim Khaimov;

(c) Designation of the named Plaintiffs as a representative of the Rule 23 Class and counsel of record as Class Counsel;

(d) Damages for unpaid minimum wages in an amount to be determined at the trial of the action, along with liquidated damages as provided by the FLSA, interest, attorneys' fees, and the cost of the action;

(e) Damages for the unpaid minimum wages, along with liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations, and interest, attorneys' fees, and the cost of the action;

(f) Damages for the unpaid overtime wages in an amount to be determined at the trial of the action, liquidated damages as provided by the FLSA, interest, attorneys' fees, and the cost of the action;

(g) Damages for unpaid overtime wages in an amount to be determined at the trial of the action, liquidated damages as provided by the NYLL, interest, attorneys' fees, and the cost of the action;

(h) Damages for unpaid spread-of-hours in an amount to be determined at the trial of the action, liquidated damages as provided by the NYLL, interest, attorneys' fees, and the cost of the action;

(i) Penalties of fifty dollars for each workday that Penn Station Shoe Repair, Inc., 45th Street Park Avenue Shoe Repair Inc. and Vadim Khaimov failed to provide Plaintiffs and the Rule 23 Class with a wage notice, or a total of five thousand dollars, as provided for by NYLL, Article 6, § 198;

(j) Penalties of two hundred and fifty dollars for each workday that Penn Station Shoe Repair, Inc., 45th Street Park Avenue Shoe Repair Inc. and Vadim Khaimov failed to provide Plaintiffs and the Rule 23 Class with accurate wage

statements, or a total of five thousand dollars as provided for by NYLL, Article 6, § 198;

(k) For pre-judgment and post-judgment interest on the foregoing amounts;

(l) For the costs and disbursements of the action, including attorneys' fees;

(m) Directing Defendants to play Plaintiffs compensatory damages; punitive damages and reasonably attorney fees for Defendants' unlawful retaliatory actions under both the FLSA and NYLL; and

(n) For such other further and different relief as the Court deems just and proper.

Dated: February 12, 2020
     New York, New York

                Respectfully submitted,

                **BERANBAUM MENKEN LLP**

                */s/ Bruce E. Menken*
                Bruce Menken

                **LAW OFFICES OF JACOB ARONAUER**

                */s/ Jacob Aronauer*
                Jacob Aronauer

                *Attorneys for Plaintiffs*